13673

GREAT ATLANTIC & PACIFIC TEA CO. v. CITY OF SPARTAN-BURG

SOUTHERN GROCERY STORES, INC., v. SAME

(170 S. E., 273)

264

*Messrs. Lyles & Daniel,* for appellant,

*Messrs. Nicholls, Wyche & Russell, Tillett, Tillett, & Kennedy* and *Perrin & Tinsley,* for respondent,

July 20, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

Each of the respondents operates a group of retail grocery stores in the City of Spartanburg; the first operating six stores and the second seven. Each paid the business license tax imposed by a certain ordinance of the city under protest, and within the statutory time brought suit to recover the amount paid, on the ground of the alleged invalidity of those sections of the ordinance under which they were taxed.

The demurrers of the City of Spartanburg to the complaints were overruled by orders of Circuit Judge Sease, and the appeals are from those orders.

Since the questions raised in both cases are identical, the parties have agreed that the decision in the first case, that of the Great Atlantic & Pacific Tea Company, respondent, against the City of Spartanburg, appellant, shall also be determinative of the other case.

The exceptions of the appellant are three in number, and the respondent proposed three additional grounds for sustaining the order of the Circuit Judge, but all the counsel agree in their printed briefs that there is only one point in the case, and that is whether the ordinance, which is challenged, was within the authority granted by the State to municipalities to impose license taxes embodied in Section 7433 of the Code.

So much of the ordinance as is questioned in this appeal, set out in the complaint, should be reported. It classifies meat

markets into two classes, and merchants into seven classes, which may be briefly designated as follows: Meat markets: (1) Operating from refrigerator counter; and (2) operating from refrigerator. Merchants: (1) Retail merchants operating one store; (2) retail merchants operating two stores; (3) retail merchants operating three stores; (4) retail merchants operating four stores; (5) retail merchants operating five stores; (6) retail merchants operating more than five stores; and (7) wholesale merchants.

The ordinance imposes a different tax upon each classification, and the license is graduated in accordance with the amount of gross business done.

The City of Spartanburg contends that it has the authority to classify businesses for the purpose of imposing license taxes, and, so long as the ordinance makes a proper classification—that is, a classification which has a reasonable basis —and the license taxes are graduated on each class according to the gross income of the business taxed, such taxes are within the proper exercise of the authority granted to municipal corporations under Section 7433.

The respondent contends that the license taxes imposed herein are graduated, not only according to the gross income of the business taxed, but are graduated also upon the number of stores operated as a business, and with this view the trial Court agreed.

As this Court views the question presented, it is one of importance to the municipalities of the State, and, reduced to its last analysis, is: Has a municipality, vested with the powers contained in Section 7433 of the Code, the authority to make distinctions and classifications in imposing license taxes?

The respondent, if we understand its position correctly, does not question the power of the State to place "chain stores," as they are commonly called, into a different classification from that of an individual store for the purposes of

taxation. It admits that the State has such power, which it can confer upon municipal corporations if it wills to do so.

But if this power in the State is not conceded by the respondent, it is well settled by the decisions of the United States Supreme Court in what are referred to as "the chain store cases," in two of which the respondent was a party. *Great Atlantic & Pacific Tea Co. v. Maxwell,* 284 U. S., 575, 52 S. Ct., 26, 76 L. Ed., 500, and *Great Atlantic & Pacific Tea Co. v. Morrisett,* 284 U. S., 584, 52 S. Ct., 127, 76 L. Ed., 506.

In the case of *State Board, etc., v. Jackson,* 283 U. S., 527, 51 S. Ct., 540, 542, 75 L. Ed., 1248, 73 A. L. R., 1464, the Supreme Court found:

"* * * That the chain store has many features and advantages which definitely distinguish it from the individual store dealing in the same commodities. * * *

"In view of the numerous distinctions above pointed out between the business of a chain store and other types of store, we cannot pronounce the classification made by the statute to be arbitrary and unreasonable. That there are differences and advantages in favor of the chain store is shown by the number of such chains established and by their astonishing growth. More and more persons, like the appellee, have found advantages in this method of merchandising and have therefore adopted it."

We therefore recur to the sole question in the appeal: Has a municipality the power to make classifications in imposing license taxes? Or, stated in another way, Has the State conferred such power upon municipal corporations?

Section 6 of Article 8 of the Constitution of this State provides: "The corporate authorities of cities and towns in this State shall be vested with power to assess and collect taxes for corporate purposes, said taxes to be uniform in respect to persons and property within the jurisdiction of the body composing the same; and all property, except such as is exempt by law, within the limits of cities and towns

shall be taxed for the payment of debts contracted under authority of law. License or privilege taxes imposed shall be graduated so as to secure a just imposition of such tax upon the classes subject thereto."

It has been held that the language of the mentioned section was not such as to give a direct grant of authority to municipal corporations, but that it was a direction to the General Assembly. *Carroll v. Town of York,* 109 S. C., 1, 95 S. E., 121; *Charleston Heights Co. v. City Council of Charleston,* 138 S. C., 187, 136 S. E., 393.

Pursuant to the foregoing provisions of the Constitution, the Legislature enacted Section 7433 of the Code, which was originally enacted into law as Section 13 of "An Act to provide for the incorporation of cities of more than five thousand inhabitants," approved February 19, 1901 (23 St. at Large, p. 653). The section, it will be noted, confers upon municipal corporations, to which it is applicable, general powers of imposing license taxes, limited by the following proviso: "Provided, That said license shall be graduated according to the gross income of the persons, firms or corporations required to pay such license, or upon the amount of capital invested in said business."

While the Legislature was considering this act originally, the Supreme Court had pending before it the case of *Hill v. City Council of Abbeville,* 59 S. C., 396, 38 S. E., 11, 16. In that case, an ordinance imposing licenses in the city of Abbeville was under attack, on the ground that the ordinance was discriminatory, in that it had classified businesses. The legislative authority, under which the city of Abbeville was acting, provided: "That said council may, and they are hereby, authorized annually to require by ordinance the payment of such reasonable sums of money as a license tax by any person or persons, corporation or corporations, engaged or intending to engage in any calling, business, occupation or profession, in whole or in part, within the limits of said town, except those engaged in the calling or profession of

teachers or ministers of the gospel. They shall have power to collect license or taxes from all persons representing publicly within the limits of said town, for gain or reward, any plays or shows of whatever nature or kind soever; and said town council are hereby authorized and empowered to pass such ordinances as are necessary to give full force and effect to this section, and to punish delinquents thereunder."

The Court, in upholding the validity of the ordinance, said in part: "As all callings, occupations, and kinds of business differ, more or less, the one from the other, 'the very power to impose a tax that will be just on each class involves the right to make distinctions between trades, *and between essentially different methods of conducting the same general character of business or trade'* (*In re Haskell*, 112 Cal., 412, 44 P. 725, 32 L. R. A., 529), and 'what is a reasonable license fee must depend largely upon the sound discretion of the city council,' etc. (*In re Haskell, supra*)." (Emphasis ours.)

In the case of *Standard Oil Company v. City of Spartanburg*, 66 S. C., 37, 44 S. E., 377, the opinion in the case of *Hill v. City Council of Abbevile* was quoted with approval, and the Court held that the city of Spartanburg had the right to make classifications in imposing license taxes, but went further and held that particular ordinance unconstitutional because there was no reasonable ground for the classifications made. It does not appear under what legislative authority the city of Spartanburg was acting at the time.

In the case of *Cowart v. City Council of Greenville*, 67 S. C., 35, 45 S. E., 122, the Court again quoted the case of *Hill v. City Council of Abbeville* with approval, and held, quoting syllabus: "Placing money lenders on personal property on short loans by municipality in a class by themselves, different from banks, &c., for license taxing, is neither discriminatory nor unconstitutional."

This case passed upon an ordinance enacted prior to the passage of the Act now under consideration.

There is a distinction between the retail grocer, operating one store, and the chain store corporation, operating a half dozen stores in various localities within the city. And we think it cannot be said that a classification which recognizes the distinction and is based in reason can be called arbitrary or unfair.

The city contends that its license is graduated on gross income, and applies uniformly to all of the same class, and we agree with that position. It has adopted a new classification, suggested by the new chain store method. If the classification is not arbitrary; is not wholly unsupported by a reasonable difference in the classes, it is not discriminatory, and it is of no significance that the basis of classification is included in the graduated taxing formula.

We think there is a clear distinction between the classes, in the manner and method of doing business, in the hazard to public welfare, and in the tax on the public facilities.

The six-store merchant likely puts a six times greater strain upon the fire and police departments than does the one-store merchant, and uses the streets for perhaps more than six times as many stocking and delivery operations. The chain store, in reality conducting a combination wholesale and retail business from its regional warehouses through its local outlets, daily uses the streets with its large trucks and trailers, making them serve as freight highways, accentuating traffic problems, and subjecting the streets to extraordinary wear and tear. The public provides the streets, the police and fire protection. The public provides the community; the chain store selects from a consideration of the public facilities and protections.

The judgment of this Court is that the orders overruling the demurrers be, and the same are hereby, reversed.

Messrs. Justices Stabler, Carter and Bonham concur.